## CIRCUIT COURT OF THE CITY OF RICHMOND

Lee Ivory Price

v.

Richfood, Inc.

May 11, 1981

Case No. LD-950

By JUDGE WILLARD I. WALKER

This matter is before the court on a workmen's compensation plea pursuant to Va. Code Ann. §§ 65.1-29 and 65.1-40 (Repl. Vol. 1980). Based on the findings outlined below, the plea is denied.

The facts are as follows: On November 17, 1978, plaintiff, Lee Ivory Price, in the course of his employment with Spector Freight Systems, Inc., drove a truckload of merchandise from the Richmond Spector terminal to the warehouse of defendant, Richfood, Inc., also in the Richmond area. Spector had been hired by a supplier, Johnson Wax, to haul the merchandise from the Johnson Wax plant and deliver it to the buyer Richfood. Spector had called Richfood before plaintiff left to notify them that the shipment had arrived and to set up a time for delivery. Upon arrival at the Richfood warehouse, plaintiff checked in with the foreman, who received the bills of lading and assigned plaintiff to an available unloading dock. Plaintiff was also assigned a device variously called a "tow lift," a "forklift," or a "rider-walkie jack" to assist him in unloading the cargo from the truck. This piece of equipment was owned and controlled by Richfood, and it was apparently supplied to expedite the unloading. A demurrage charge accrues when the loading is delayed.

Since Spector was hired by the supplier, Johnson Wax, there was no written contract between Spector and

Richfood; there was an agreement, evident in the course of dealings between the two parties, that Spector drivers would be responsible for unloading the cargo from their trucks, with no physical assistance from Richfood employees. After being assigned a tow lift, plaintiff removed the boxes to the dock behind the truck, and then proceeded to "palletize" the goods. This means that he separated the boxes and placed them onto different pallets. Using the tow lift, he stacked the "palletized" boxes farther back on the loading dock. Richfood employees would then "check in" the goods. Plaintiff was injured when the tow lift allegedly malfunctioned.

Richfood claims it was the "statutory employer" of plaintiff. Va. Code Ann. § 65.1-29 (Repl. Vol. 1980). Under this theory, plaintiff would have the right to collect compensation from his statutory employer, Richfood. Consequently, his right to sue at law would be barred by § 65.1-40.

In order to qualify as a statutory employer under Section 65.1-29, three requisites must be met. First, the trade, business, or occupation of the "owner" must be established. Second, the owner must have contracted with another party, the "subcontractor," to do all or part of the owner's work. Third, the subcontractor must have been actively involved in the work previously established as that of the owner. Once these criteria have been established, any "workman employed in the work" is entitled to compensation from the owner for his injuries.

Richfood is the "owner" in the case at bar. Though the term is not defined in the statute, it is clear that Richfood is the pinnacle of any statutory umbrella because it initiated the alleged statutory family, by contracting with Johnson Wax which in turn contracted with Spector.

The first issue is to determine the trade, business or occupation of the owner, Richfood. Richfood is a grocery co-operative, a wholesale distributor for retail members. Clearly its business involves warehousing goods, wholesaling them, and hauling them in its Richfood trucks to the member stores within the Richfood network which sell Richfood products. The question of Richfood's business is less clear, however, when it comes to the activity at issue here--the transporting in of goods, or "importing," so to speak, as opposed to the "exporting" of Richfood goods to member stores. The evidence shows that

while Richfood utilizes exclusively its private fleet of trucks to ship the good *out*, the same is not true for goods trucked *into* Richfood's warehouse. The normal practice is for suppliers to retain common carriers to haul the goods to Richfood, as was the case here. It is true that some Richfood trucks, on their way back from a delivery to a retail store, pick up merchandise from the supplier at its place of business. This is known as a "back haul" and saves Richfood money, because it makes use of what would otherwise be a wasted trip back to Richfood. Richfood can thus be paid for the delivery instead of the common carrier. It is also true that Richfood understandably wants to do more "back haul" business. The percentage, however, of back haul to total receivings (which includes rail and trucking companies as well as back haul) is something close to 13% a year. Clearly, Richfood is not *normally* in the business of trucking goods into its warehouse. This *de minimis* approach was suggested in *Sun Oil Co. v. Lawrence*, 213 Va. 596, 194 S.E.2d 687 (1973), where only 2% of all Sunoco stations in the state were owned by Sun Oil Company directly. The supreme court held that Sun Oil was not normally in the business of retailing gasoline to consumers; and as a result, Sun Oil Company was not held liable for workmen's compensation benefits to an employee of a lessee. The supreme court upheld Sun Oil in *Bassett Furniture Industries, Inc. v. McReynolds*, 216 Va. 897, 224 S.E.2d 323 (1976) by endorsing the Larson test: "Frequency and regularity of performance are factors to be considered in determining whether work is 'normally carried on through employees.' Mere capacity to perform, standing alone, is not determinative. Nor is performance which is a *de minimis* part of the total business operation." 216 Va. at 902-03 (citations omitted). *Barber v. Loews Theatres*, 355 F. Supp. 136 (W.D. Va. 1972) is in accord.

I hold that Richfood is not in the trade, business or occupation of trucking goods from the supplier into its warehouse.

The second determining feature of a statutory employment "family" is the presence of a contractual relationship between the owner and a "subcontractor." There was no formal, written contract between Richfood and Spector. Yet I find that the contractual element has been satisfied for two reasons. First, Richfood and Spector had an oral understanding concerning the manner of delivery (discussed

above), which was tantamount to an oral contract. Second, Richfood contracted with Johnson Wax to supply a product and ship it to the Richfood warehouse. Johnson wax in turn contracted with Spector to carry out the delivery function of its contract with Richfood. A contract need not be directly between the plaintiff's employer and the defendant company in order to comply with the requirements of § 65.1-29. The indirect contractual relationship which existed in *Bosher v. Jamerson*, 207 Va. 539, 151 S.E.2d 375 (1966), between plaintiff Jamerson's employer, Re-Com, and the trucker, Bosher, did not bar Jamerson's recovery at law, nor was the contractual element even at issue in that case.

Although there was adequate evidence of a contract in the case at bar, this begs the point, since the delivery of goods to Richfood was not part of Richfood's trade, business or occupation, as noted above. Thus, neither Johnson Wax nor Spector as potential "subcontractors," while hauling the goods per se, could have been performing one of Richfood's functions.

Thus, the third and final issue of the case presents itself. Was Spector, plaintiff's employer, involved in the trade, business or occupation of Richfood? I have just established that delivery alone did not make Spector "involved in the work." But was Spector through its employee doing more than just delivering? Plaintiff backed his truck up to Richfood's dock at the direction of a Richfood employee. He removed the boxes from the truck, put them on pallets, and used the tow lift to move the "palletized boxes" even farther back on the dock. This work was expected of him by both Richfood and Spector, and he was injured while in the scope of this activity.

In *Burroughs v. Walmont, Inc.*, 210 Va. 98, 168 S.E.2d 107 (1969), the plaintiff, an employee of the supplier/deliverer, was injured while delivering sheet rock at the defendant's home construction site. Plaintiff was required to count out a specified number of pieces of sheet rock per room and deposit these pieces in each room. The supreme court considered his activity "the final act of delivery, not an act of construction," 210 Va. at 100, which would have made plaintiff's employer involved in the work of the defendant.

*Burroughs* is applicable to the case at bar. Counting out boxes, "palletizing" them by number, and stacking them behind the truck is the "final act of delivery,"

analogous to counting out and carrying the sheet rock into the house in *Burroughs*.

I find that Spector, through its employee, the plaintiff, was engaged in a final act of delivery. It was not involved in the work of warehousing grocery products. The workmen's compensation plea is denied.